IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 27, 2004

## STATE OF TENNESSEE v. DEXTER LINEBERRY

**Direct Appeal from the Circuit Court for Wayne County**
**No. 12910     Stella Hargrove, Judge**

---

**No. M2002-00993-CCA-R3-CD - Filed March 24, 2004**

---

The defendant, Dexter Lineberry, was convicted by a Wayne County jury of assault, a Class B misdemeanor, and evading arrest, a Class A misdemeanor. The trial court sentenced the defendant to six months with all but ninety days suspended for the assault conviction, and eleven months and twenty-nine days with all but ninety days suspended for the evading arrest charge, with the sentences to be served concurrently. In this appeal as of right, the defendant presents two issues: (1) whether the evidence is sufficient to support the defendant's conviction for assault; and (2) whether the ninety-day jail sentence was appropriate. Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and ROBERT W. WEDEMEYER, J., joined.

Claudia S. Jack, District Public Defender; and Robert H. Stovall, Jr., Assistant District Public Defender, for the appellant, Dexter Lineberry.

Paul G. Summers, Attorney General and Reporter; John H. Bledsoe, Assistant Attorney General; Mike Bottoms, District Attorney General; and J. Douglas Dicus, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS

On August 30, 2002, Officer Tim Beckham of the Clifton Police Department answered a domestic assault call in Clifton, Tennessee. When Officer Beckham arrived, he saw the victim, the defendant's wife, Linda Joyce Lineberry, who had a "busted lip," at her next-door neighbor's home from where the sheriff's department had been called. She had told the dispatcher, "My husband slapped me." After talking with the victim, Officer Beckham went to her home to speak with the

defendant. Beckham knocked on the door at the defendant's house, with the defendant coming out on the porch to speak with him. The officer asked if he and his wife had an argument, and the defendant responded, "[Y]eah, I slapped her after she hit me." Beckham advised the defendant that he was going to place him under arrest. The victim returned home while Beckham was talking to the defendant, and the defendant asked her if she was going to press charges, to which she replied that she was not. At this point, the defendant turned and went inside his house. Beckham tried to follow but was denied entry by the defendant. Beckham shoved against the door, but the defendant blocked it from the other side. Beckham then returned to his patrol car to radio for assistance, and the victim went inside the home where she told the defendant that Officer Beckham had left the porch. The victim then came back outside, and Beckham escorted her to her neighbor's home instructing that she stay there.

At trial, the victim explained the incident by saying that she had passed out as a result of a seizure, and the defendant slapped her to revive her. Asked if she had told Officer Beckham about the seizure that night, she said that she did not have a chance. The victim testified that Officer Beckham informed the defendant that he was going to file warrants the next day, and she told the officer that she did not want her husband to go to jail.

Deputy Barney Harville of the Wayne County Sheriff's Department testified that he responded to Officer Beckham's call for backup at the Lineberry residence. Harville stated that at approximately 2:00 a.m., after a third officer arrived, the three of them began a "systematic search" for the defendant, looking first in the house and then the yard, speaking with neighbors, and searching an empty lot nearby. At approximately 5:00 a.m., they called off the search without finding him.

Bobby Lineberry, the defendant's brother, testified as a defense witness that the victim told him she had a seizure. He said that "more than one" officer was "within earshot" when the victim spoke of the seizure.

The defendant said that, on the day of the incident, he had arrived home between 5:30 and 6:00 p.m. and from then until about 11:30 p.m., he consumed "probably eight beers or nine" while he and the victim visited with neighbors outside their home. He went inside the house twenty to twenty-five minutes after the victim had done so and found her "sprawled out in the hallway." Reacting as he "normally" would when she had a seizure, he "[s]mack[ed] her in the face a little bit, and w[o]ke her up." He said that he slapped her "[p]robably eight or ten" times. He "[h]ad her sitting in the chair in the kitchen, waiting for her to come back to normal." Although he did not hit her hard enough to injure her, the victim's "lip was bleeding." As he then was going to bed, "all of a sudden here comes a beer mug flying in [sic] into the bedroom." The victim left, saying, "I'm going to the neighbor's house." On cross-examination, he said that he was worried about the victim when she left, but he "wasn't going [t]o hog-tie her up and pull her back."

The defendant testified that while he was standing on the porch talking to Officer Beckham, the victim came home and gave negative responses when he asked if she had called the police and

if she was pressing charges.  Officer Beckham then said, "I'm pressing charges," and the defendant went back inside the house.  He said that when he tried to close the door, Beckham put his hand on it, but he was able to close it.  The defendant explained why he closed the door on Officer Beckham:

> A.    Well, is he God?  He's not God.  I don't have to stand there and talk to somebody I don't want to talk to.
>
> Q.    But you understand you had to comply with police officers don't you, sir?
>
> A.    Yes, sir, but he . . . I'll comply – I, I do that everyday in my life.  I try to do it the right way.  If it's against the law, I try not to do it.  I been [sic] doing that for several years now.
>
> I'll admit when I was younger I didn't.  I didn't care whatever.  But for the last 20 years I have.  I've got a 17-year-old daughter.  I've tried to set a good example, even an old hippie deserves a little respect.

The defendant then went to bed, but, after realizing that he could not go to sleep, he went out the front door barefoot and shirtless to go for a walk.  He said that there was a car parked on the road in front of his house when he left and in the same spot when he returned.  He saw some people "messing around" down the road and went inside his house.  His brother came in and said, "[Y]ou know the cops are looking for you."  The defendant replied, "No, I didn't know they was [sic] looking for me, but I'm going to bed, I'm not messing with them. . . .  I'll see them tomorrow evening when I get back."  The next evening when the defendant returned home, two officers were waiting for him and arrested him.  According to the defendant, he cooperated with these officers because they "treated [him] with respect."

## ANALYSIS

### I. Sufficiency of the Evidence

The defendant argues on appeal that the evidence is insufficient to sustain his conviction for assault.  In determining the sufficiency of the evidence, this court does not reweigh or reevaluate the the evidence.  State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).  A jury verdict approved by the trial judge accredits the State's witnesses and resolves all conflicts in favor of the State.  State v. Bigbee, 885 S.W.2d 797, 803 (Tenn. 1994).  On appeal, the State is entitled to the strongest legitimate view of the evidence and all legitimate or reasonable inferences which may be drawn therefrom.  Id.  This court will not disturb a verdict of guilt due to the sufficiency of the evidence unless the defendant demonstrates that the facts contained in the record and the inferences which may be drawn therefrom are insufficient, as a matter of law, for a rational trier of fact to find the accused guilty beyond a reasonable doubt.  State v. Brewer, 932 S.W.2d 1, 19 (Tenn. Crim. App.

1996). Accordingly, it is the appellate court's duty to affirm the conviction if the evidence, viewed under these standards, was sufficient for any rational trier of fact to have found the essential elements of the offense beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994).

The defendant was convicted of Class B misdemeanor assault, which occurs when a person "[i]ntentionally or knowingly causes physical contact with another and a reasonable person would regard the contact as extremely offensive or provocative." Tenn. Code Ann. § 39-13-101(a)(3).

The victim testified that she told the sheriff's dispatcher over the telephone that the defendant had slapped her. Officer Beckham, the first officer on the scene, testified that the victim had a "busted lip." The defendant told Beckham, "[Y]eah, I slapped her after she hit me" and testified in court that he struck her eight to ten times. This evidence was sufficient for a reasonable jury to find that the defendant had assaulted the victim.

## II. Excessive Sentence

The defendant argues that his sentence is excessive and that he should have been granted full probation.

When an accused challenges the length and manner of service of a sentence, it is the duty of this court to conduct a *de novo* review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In conducting a *de novo* review of a sentence, this court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancing factors, (g) any statements made by the accused in his own behalf, and (h) the accused's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103, -210. The party challenging the sentences imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401, Sentencing Commission Cmts.; Ashby, 823 S.W.2d at 169.

Misdemeanor sentencing is controlled by Tennessee Code Annotated section 40-35-302, which provides, in part, that the trial court shall impose a specific sentence that is consistent with the purposes and principles of the 1989 Sentencing Reform Act. See Tenn. Code Ann. § 40-35-302(b). Although the Sentencing Reform Act typically treats misdemeanants and felons the same, misdemeanants are not given the presumption of a minimum sentence. See State v. Seaton, 914 S.W.2d 129, 133 (Tenn. Crim. App. 1995). A separate sentencing hearing is not required in misdemeanor sentencing, but the trial court must "allow the parties a reasonable opportunity to be heard on the question of the length of any sentence and the manner in which the sentence is to be

served." Tenn. Code Ann. § 40-35-302(a). A misdemeanor sentence, unlike a felony sentence, has no sentence range. State v. Baker, 966 S.W.2d 429, 434 (Tenn. Crim. App. 1997).

The trial court has great flexibility and discretion in fashioning a misdemeanor sentence. The sentence must be specific and in accordance with the principles, purposes, and goals of the 1989 Sentencing Act. Tenn. Code Ann. § 40-35-302(b); State v. Palmer, 902 S.W.2d 391, 393 (Tenn. 1995). The trial court should consider enhancement and mitigating factors in making its sentencing determinations; however, unlike the felony sentencing statute, which requires the trial court to place its findings on the record, the misdemeanor sentencing statute "merely requires a trial judge to consider enhancement and mitigating factors when calculating the percentage of a misdemeanor sentence to be served in confinement." State v. Troutman, 979 S.W.2d 271, 274 (Tenn. 1998). The trial court is authorized to place the misdemeanant on probation either immediately or after a term of confinement. Tenn. Code Ann. § 40-35-302(e). When a defendant challenges a misdemeanor sentence, this court conducts a *de novo* review with a presumption that the trial court's determinations are correct.

A trial court may base a sentence of confinement upon any one of the following considerations:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
> (C) Measures less restrictive than confinement have frequently or recently have been applied unsuccessfully to the defendant[.]

Tenn. Code Ann. § 40-35-103(1); see State v. Scott, 735 S.W.2d 825, 829 (Tenn. Crim. App. 1987).

In sentencing the defendant, the trial court explained that it was considering the evidence in the matter, including testimony and records; the presentence report; and the principles of sentencing. The court noted that he had been convicted in 1994 of the felonies reckless endangerment with a deadly weapon and attempted aggravated burglary, receiving sentences, respectively, of one year and two years, both suspended, and that in 2001 he had been placed on probation for public intoxication. This latter conviction was relevant, explained the court, because the defendant said that he had been drinking the night he assaulted the victim. Additionally, the court explained that the version of the facts testified to by the defendant and the victim was "blatantly false and incredible." Accordingly, the court determined that, while a portion of the defendant's sentences would be suspended, he should be incarcerated for ninety days. Following our review, we note that the defendant had been placed on probation six times in the past, primarily for driving or intoxication offenses, and conclude that the record fully supports the determination of the trial court that the defendant should be confined for a portion of his sentences.

## CONCLUSION

Based upon the foregoing authorities and reasoning, we affirm the judgments of the trial court.

_____

ALAN E. GLENN, JUDGE